## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Larry Klayman, et. al.

       Appellees-Cross-Appellants,

         v.

Barack Hussein Obama, et al.,

       Appellants-Cross-Appellees.

Nos. 14-5004, 14-5016
14-5005, 14-5017

## NOTICE OF FILING BEFORE DISTRICT COURT CONCERNING VACATING STAY OF COURT ORDER OF DECEMBER 16, 2013

Appellees-Cross-Appellants hereby give notice of filing of the attached Plaintiff's Amended Expedited Second Supplement to Motion to Lift Stay Pending Appeal that was filed before the U.S. District Court for the District of Columbia. *See* Exhibit A.

Dated: August 11, 2015

          Respectfully Submitted,

          /s/ *Larry Klayman*
          Larry Klayman, Esq.
          D.C. Bar No. 334581
          2020 Pennsylvania Ave. NW #345
          Washington, DC 20006
          Tel: (310) 595-0800
          Email: leklayman@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

Respectfully Submitted,

/s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW #345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN, *et al.,*

                Plaintiffs,

v.

BARACK OBAMA, President of the United States, et al*.,*

                Defendants.

Case Nos:
1:13-cv-851-RJL
1:13-cv-881-RJL
1:14-cv-092-RJL

Assigned to Judge Richard J. Leon

## PLAINTIFFS' AMENDED EXPEDITED SECOND SUPPLEMENT TO MOTION TO LIFT STAY PENDING APPEAL

At the end of this Court's order of December 16, 2013, this Court anticipated that it would take approximately six (6) months for the appellate process to review this Court's preliminary injunction. Specifically, the Court held:

> Accordingly, I fully expect that during the appellate process, **which will consume at least the next six months**, the Government will take whatever steps necessary to prepare itself to comply with this order when, and if, it is upheld. Suffice it to say, requesting further time to comply with this order months from now will not be well received and could result in collateral sanctions.

(Emphasis added).

Because of the delay tactics of the Obama Justice Department and what appears to be deference to the current political climate, the U.S. Court of Appeals for the District of Circuit ("D.C. Circuit"), after nineteen (19) months (over a year and a half), still has not ruled on the government Defendants' appeal. *See* Exhibit 1 - Appellees-Cross-Appellants' Response To Appellants-Cross-Appellees' Supplemental Brief. This Court's lifting of the stay would likely serve as an incentive for the D.C. Circuit to finally rule on this issue.

1

In sum, it does not serve the interests of Plaintiffs nor hundreds of millions of Americans that the D.C. Circuit has not ruled on this case as constitutional violations continue daily. *See United States v. Mills*, 571 F.3d 1304, 1312 (D.C. Cir. 2009). *Mills* stands for the principle that one day of a constitutional violation is one day too many and cannot be permitted to continue under any circumstances, as is true here.

Accordingly, to avoid further unconstitutional delay and irreparable harm, the stay of the preliminary injunction of December 16, 2013, should now be lifted.

Dated:   August 10, 2015

Respectfully submitted,

 */s/ Larry Klayman*
Larry Klayman, Esq.
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

*Attorney for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of August, 2015, a true and correct copy of the foregoing (Civil Action Nos. 13-cv-851, 13-cv-881, and 14-cv-92) was submitted electronically to the District Court for the District of Columbia and served via CM/ECF upon the following:

James J. Gilligan
Special Litigation Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
 (202) 514-3358
Email: James.Gilligan@usdoj.gov

Attorney for Defendants.

Respectfully submitted,
 /s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800

USCA Case #14-5004      Document #1567289      Filed: 08/11/2015      Page 7 of 49

# Exhibit 1

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Larry Klayman, et. al.

      Appellees-Cross-Appellants,

        v.

Barack Hussein Obama, et al.,

      Appellants-Cross-Appellees.     Nos. 14-5004, 14-5016
                                    14-5005, 14-5017

## APPELLEES-CROSS-APPELLANTS' RESPONSE TO APPELLANTS-CROSS-APPELLEES' SUPPLEMENTAL BRIEF

      Appellees-Cross-Appellants, Larry Klayman, Charles Strange, and Mary Ann Strange hereby file this Response to Appellants-Cross-Appellees' Supplemental Brief.

## INTRODUCTION

      This is an appeal from the U.S. District Court for the District of Columbia's December 16, 2013 Order granting Appellees-Cross-Appellants a preliminary injunction against Appellants-Cross-Appellees' illegal and unconstitutional bulk telephony-metadata collection program for violations of the Fourth Amendment to the U.S. Constitution, pursuant to Section 215 of the Patriot Act. At the onset, it is important to note that **all Appellees-Cross-Appellants have requested in their**

**preliminary injunction is that Appellants-Cross-Appellees obey the U.S.
Constitution and Section 215 of the Patriot Act.** Appellees-Cross-Appellants
requested a preliminary injunction pursuant to the First, the Fourth, and the Fifth
Amendments to the U.S. Constitution, as well as Section of 215. The District Court
granted Appellees-Cross-Appellants' motion for preliminary injunction pursuant to
the Fourth Amendment.[1] This is not an extraordinary relief; Appellees-Cross-
Appellants are simply requesting that the National Security Agency ("NSA") and
other agencies be compelled to follow and respect the Fourth Amendment to the
U.S. Constitution.

Appellants-Cross-Appellees' supplemental brief tries to make three points:
(1) that even after the enacting of the USA Freedom Act, Section 215 is still in
effect; (2) that the U.S. Court of Appeals' decision in *ACLU* v. *Clapper*, 785 F.3d
787 (2d Cir. 2015), which held that the NSA violated Section 215 of the Patriot
Act, is not applicable in this lawsuit; and (3) that since the Foreign Intelligence
Surveillance Court ("FISC") has reauthorized the illegal and unconstitutional

---

[1] The District Court granted the preliminary injunction with respect to the Fourth
Amendment and did not decide the First and Fifth Amendment claims at the time,
because, Judge Leon did not have to. He found that Defendants there had already
violated the U.S. Constitution. *See Klayman v. Obama,* 957 F. Supp. 2d 1,10 n. 7
(D.D.C. 2013) ("Because I ultimately find that plaintiffs have made a sufficient
showing to merit injunctive relief on their Fourth Amendment claim, I do not reach
their other constitutional claims under the First and Fifth Amendments. *See Seven-
Sky v. Holder,* 661 F.3d 1, 46 (D.C. Cir. 2011).")

surveillance that somehow that makes it acceptable. All three of Appellants-Cross-Appellees' arguments fail.

## ARGUMENT

### 1. Appellants-Cross-Appellees Concede Section 215 Is Still In Effect

Appellants-Cross-Appellees concede that this Act will not take effect for 180 days and that the bulk collection of telephone metadata is still continuing and will continue. In their supplemental brief, Appellants-Cross-Appellees state:

> Finally, Congress provided for a 6-month transition period by delaying for 180 days the effective date of the new prohibition on bulk collection under Section 215, and also the corresponding implementation date of the new regime of targeted production under the statute. USA FREEDOM Act § 109(a). Congress specified that the USA FREEDOM Act does not during that period "alter or eliminate" the government's longstanding authority, as reflected in numerous opinions from the Foreign Intelligence Surveillance Court, to conduct bulk-collection activities under Section 215. *See id.* § 109(b). During that transition period, then, the former version of Section 215 remains fully in effect as part of that transition and permits the government to continue such bulk collection. 161 Cong. Rec. S3439-3440 (daily ed. June 2, 2015) (statement of Sen. Leahy) (noting that Congress "included a provision to allow the government to collect call detail records, CDRs, for a 180-day transition period, as it was doing pursuant to Foreign Intelligence Surveillance Court orders prior to June 1, 2015").

**Thus the violative and unconstitutional conduct continues unabated**. *See United States v. Mills*, 571 F.3d 1304, 1312 (D.C. Cir. 2009). *Mills* stands for the principle that one day of a constitutional violation is one day too much and cannot be permitted to continue under any circumstances, as is true here.  It has been over

3

two years since the lawsuit was filed and over a year and a half that the preliminary injunction was granted, but stayed pending appeal. That the Courts have not acted to enjoin the unconstitutional behavior in this period flies in the face of the Supreme Court's ruling in *Mills* and other binding precedent.

And, importantly, the expiration of the Patriot Act, and the subsequent enactment of the USA Freedom Act, does not alter the consideration of this case. In fact, the USA Freedom Act is not a part of the record before appeal. This case was not only about the illegal conduct of the NSA in violation of Section 215 and the First, Fourth, and Fifth Amendments to the U.S. Constitution.  Attached as Exhibit 1 to this Opposition is the Motion for Preliminary Injunction filed by the American Civil Liberties Union ("ACLU") in *ACLU* v. *Clapper*, No. 14-42, which is currently before the Second Circuit. The ACLU asked that the Court treat this filing as satisfying the Court's request for supplemental briefing on the same issue of mootness after the passage of the USA Freedom Act and Appellees-Cross Appellants feel this filing will also be of value to this Court as well. The ACLU's brief will aid this Court in finally rendering a decision for this appeal.

Further, based on its past pattern of illegal and unconstitutional conduct, strong evidentiary inferences arise that the NSA will resume accessing telephone metadata and other confidential and private data through some other vehicle or law. Thus, that the law will someday change does not render this case moot. It is

only though court intervention that the NSA will be forced to put an end to their unconstitutional actions.

The passage of legislation oftentimes does not signal the end of the wrongful actions. The most prominent example in our history was likely the passage of the Civil Rights Act of 1964 and the refusal of cities and states to follow the law.

For example, in *Davis V. East Baton Rouge Parish School Board*, 214 F. Supp. 624 (E.D. La. 1963), U.S. District Court for the Eastern District of Louisiana was forced to step in and issue a permanent injunction which forced the schools to desegregate years after the U.S. Supreme Court issued its decision in *Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954).

Further, even when mass surveillance under Section 215 does cease, this does not mean that this case is now moot as there are additional remedies that was sought by Appellees-Cross-Appellants. In *Church of Scientology of California v. United States*, 506 U.S. 9 (1992), the U.S. Supreme Court held that if "a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot." *Id.* at 13. Thus, if there is a partial remedy still available, a case is not moot.

*Church of Scientology of California* is directly on point. Appellees-Cross-Appellants requested in their motion for preliminary injunction that all their

illegally telephony and other metadata be deleted from the government's possession.

Thus, even if the illegal mass surveillance is determined to have ceased, which it is clear it has not, this case must still continue forward so that this Court or the District Court can grant the additional equitable relief that was requested by Appellees-Cross-Appellants, which concerns the collection and retention of Appellees-Cross-Appellants metadata and other class members, as lower court case numbers 14-5016, 14-5017 are also on cross-appeal.

**2. <u>The Mass Surveillance Violates Both Section 215 and the Fourth Amendment</u>**

When the Appellants-Cross Appellees violated Section 215, they simultaneously violated the Fourth Amendment to the U.S. Constitution. The Fourth Amendment requires that a warrant be issued with "probable cause." Under Section 215, Appellants-Cross Appellees do not even have to show a reasonable suspicion that the records are related to criminal activity, much less the requirement for "probable cause" that is listed in the Fourth Amendment to the Constitution. All the Appellants-Cross Appellees needs to do is make the broad assertion that the request is related to an ongoing terrorism or foreign intelligence investigation.[2]  Thus, every time there was a violation of Section 215, there was a

---

[2] Under Section 215, in order to file an application all that is required is: "a statement of facts showing that there are <u>reasonable grounds to believe that the</u>

simultaneous violation of the Fourth Amendment.  As shown throughout this brief,

**these constitutional violations are still ongoing**.

### 3. <u>The Pattern and Practice of the NSA Indicates that The Illegal Conduct Will Continue</u>

Even after the enactment of the USA Freedom Act, court oversight is still a

necessity to ensure that the NSA and other federal agencies are complying with the

law.  Based on the pattern and practice of the NSA and other agencies, it clearly

does not matter to them what the law was at the time that the illegal mass

surveillance was occurring.  As shown below, and as this Court's records reflects,

Appellants-Cross-Appellees have a history of not obeying any law and a

documented pattern of lying, even under oath, to the courts, Congress, and the

American people that they have obeyed the law – as set forth in the initial and

supplemental briefs. Thus the enactment of the USA Freedom Act is irrelevant.

The NSA has been forced to admit, as it must, that it has significantly failed

to comply with the minimization procedures that were set forth in certain orders.

SA 21. For instance, in 2009, the NSA reported to the FISC that the NSA had

improperly used an "alert list" of identifiers to search the bulk telephony metadata,

which was composed of identifiers that had *not* been approved under the RAS

---

tangible things sought are relevant to an authorized investigation (other than a
threat assessment) conducted in accordance with subsection (a)(2)…" 50 U.S.C. §
1861(b)(2)(A)(Emphasis added).

standard. SA 21. Judge Reggie Walton of the FISC, who reviewed the NSA's

reports on their noncompliance, concluded that the NSA had engaged in

"systematic noncompliance" with FISC-ordered minimization procedures over the

proceeding years, since the inception of the Bulk Telephony Metadata illegal

government surveillance, and had also repeatedly made misrepresentations and

inaccurate statements about the illegal government surveillance to the FISC judges.

Mem. Op at 21. Judge Reggie Walton concluded that he had no confidence that the

Government was doing its utmost to comply with the court's orders, and ordered

the NSA to seek FISC approval on a *case-by-case basis* before conducting any

further queries of the bulk telephony metadata collected pursuant to Section 1861

orders. Mem. Op at 21.

   The NSA and other agencies have also had further compliance violations

relating to its collection illegal government surveillance in subsequent years. SA

21. In 2011, the Presiding Judge of the FISC, Judge John Bates, found that the

Government had misrepresented the scope of its targeting of certain internet

communications pursuant to 50 U.S.C § 1881a. SA 21. Judge Bates wrote "the

Court is troubled that the government's revelations regarding NSA's acquisition of

Internet transactions mark the third instance in less than three years in which the

government has disclosed a substantial misrepresentation regarding the scope of a

major collection [illegal government surveillance]." SA 21-22. In fact, since

January 2009, the FISC's authorizations of the illegal government surveillance has "been premised on a flawed depiction of how the NSA uses BR metadata." SA 22 n.23. "This misperception by the FISC existed from the inception of its authorized collection in May 2006, buttressed by repeated inaccurate statements made in the government's submissions, and despite a government-devised and Court-mandated oversight regime." SA 22 n.23. The minimization procedures proposed by the government in each successive application and approved and adopted as binding by the orders of the FISC have been so frequently and systemically violated that it can fairly be said that this critical element of the overall BR regime has never functioned effectively." SA 22 n.23

In sum, all that Appellees-Cross-Appellants' injunctive relief requests, which is now before this Court, is that the District Court's ruling be affirmed and that Appellants-Cross-Appellees thus be preliminarily ordered to obey and adhere to the Fourth Amendment to the U.S. Constitution, and that the illegally collected metadata be purged when this lawsuit is over.

### 4. **The Second Circuit's Decision is Directly Relevant to this Lawsuit**

On May 7, 2015, the U.S. Court of Appeals for the Second Circuit held that Section 215 of the Patriot Act did not authorize the bulk telephone metadata program challenged by plaintiffs-appellants. *ACLU* v. *Clapper*, 785 F.3d 787 (2d Cir. 2015).

Appellants-Cross-Appellees falsely argue that this ruling is not relevant to this lawsuit. Nevertheless, the issue of whether the NSA and other agencies acted in violation of Section 215 is still before this Court.[3]  Appellees-Cross-Appellants have, throughout this appeal, advocated the NSA's illegal actions as a violation of the Fourth Amendment to the U.S. Constitution, and continue to do so. However, this Court also has the ability to find that Appellants-Cross Appellees engaged in an illegal violation of Section 215.  Appellees-Cross Appellants plead a violation of Section 215 under the APA in their Second Amended Complaint, the operative complaint at the time of the preliminary injunction and the notice of appeal to this Court.  The District Court considered this argument and rejected it in its December 16, 2013 Order and Appellants-Cross Appellees clearly stated in their notice of appeal that they were appealing the portions of the Order of December 16, 2013 which denied their requested relief.

Indeed, it was not until February 10, 2014 that the Third Amended Complaint was accepted onto the record and became operative. This Court is thus proceeding on the Second Amended Complaint, which was the operative complaint at the time.

---

[3] Initially, Appellees-Cross Appellants indicated in their brief that they chose not to pursue the APA claim further in order to "streamlin[e]" their case. *See* Br. for Pls.-Appellees at 17; *see also* Transcript of Hearing, at 5:5-14; 13:21-14:1.  However, this only transpired after the District Court had granted Appellees-Cross Appellants' Motion for Preliminary Injunction.

Furthermore, as set forth in Amicus Curiae Center for National Security Studies' Brief Of Amicus Curiae, a party's decision not to put a claim before the Court of Appeals does not prohibit the Court from considering the issue in order to abide by its duty to resolve the case on alternative statutory grounds where available. *See United States v. Underwood*, 597 F.3d 661, 665 (5th Cir. 2010) (considering an issue not raised on appeal *sua sponte* was appropriate in order to avoid ruling on a more difficult constitutional issue, per *Ashwander*); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases").

This Court has a duty to decide this appeal not just on the grounds of Section 215, but also on the constitutional grounds as well. What the Government Defendants did was a clear violation of the Fourth Amendment of the Constitution, and that is precisely what the District Court found. That is the primary issue before this Court and this Court must respectfully make a deliberate determination of this issue.

## 5. FISC and Congressional Approval Does Not Make The Surveillance Constitutional

Appellees-Cross-Appellants' final argument is that since the FISC and Congress have now "blessed" the continuation of the collection of the telephone metadata that this Court should no longer take any action.

The passage of the USA Freedom Act does not mean that this illegal and unconstitutional conduct no longer violates the Fourth Amendment to the U.S. Constitution. Since the founding of this country until the present day Congress has repeatedly passed legislation that has, either unintentionally or intentionally, violated the U.S. Constitution. *See*, *e.g.*, *Marbury v. Madison*, 5 U.S. 137 (1803); *United States v. Windsor*, 570 U.S. ___ (2013) (Docket No. 12-307). This is why we have a judicial system; as a check and balance to unconstitutional conduct by the other two branches of government.

Further, as shown above, the NSA and other government agencies have shown a pattern and practice of continuously lying to the FISC and refusing to comply with its orders. Thus, that the FISC has now reauthorized the illegal and unconstitutional collection of telephone metadata does not mean that the NSA and other agencies are now acting in compliance with those orders.

But this argument misses the entire point of this lawsuit altogether. The District Court has already ruled that the mass surveillance is a violation of the Fourth Amendment. **FISC's reauthorization of an unconstitutional act still**

**creates an unconstitutional act.** FISC's reauthorization does not change the U.S. Constitution and does not make the NSA's collection of telephone metadata legal.

Finally, the FISC has thus shown not to have the ability to oversee the NSA and the other agencies' illegal surveillance in its secretive proceedings.  It is up to this Court, and the District Court, to ensure that these laws are carefully being monitored, in an open and public court for all to see. It would be a District Court, with its' power to hold the NSA and other agencies in contempt, that would be able to properly monitor and oversee the actions of Appellants-Cross-Appellee and ensure that no more constitutional violations are being committed.

The rights of hundreds of millions of Americans are currently being violated and these same Americans must have the right to challenge and oversee the mass surveillance that has gone on in secret for too long. The power of the District Court to hold the NSA in contempt, when a preliminary injunction is in effect, is a valuable and necessary enforcement mechanism. The preliminary injunction ordered by Judge Leon should therefore be affirmed and put immediately into effect. Indeed, Judge Leon stated, "[a]ccordingly, I fully expect that during the appellate process, which will consume at least the next six months, the Government will take whatever steps necessary to prepare itself to comply with this order when, and if, it is upheld. Suffice to say, requesting further time to comply with this order months from now will not be well received and could result

in collateral sanction." Mem. Op. at 67-68, Dec. 16, 2013 (J. Leon). This includes the contempt powers of the District Court, which will serve as a check against and to remedy further unconstitutional conduct. The preliminary injunction should therefore finally be affirmed and immediately put into effect.

**6.  <u>The Prayer for Monetary Damages Requires That Evidence of Illegal Conduct Be Preserved for Trial</u>**

Finally, the fact that Appellees-Cross-Appellants have requested monetary damages in addition to injunctive relief also renders Appellees-Cross-Appellants' claims regarding the collection of metadata not moot. Appellees-Cross-Appellants are entitled to monetary damages for the harm caused during the period that the Government Defendants admit that they were collecting citizen's Internet metadata and other data through their illegal and unconstitutional surveillance. Discovery is, at a minimum, necessary to determine the extent and amount of monetary damages that Appellees-Cross-Appellants are entitled in regards to the time period that the NSA and other agencies violated Appellees-Cross-Appellants' Constitutional rights, as well as the rights of millions of other Americans who are members of the represented class. Indeed, *all* of the collected data must be preserved, as one of the related cases still pending before the District Court has a class action complaint and the plaintiffs, who are the Appellees-Cross-Appellants in this case, have moved for class certification. *See Klayman v. Obama,* No. 14-92 (D.D.C.)

("*Klayman III*")(Docket No. 6).  All evidence must be retained until after a jury trial is held in this case.

The NSA and other agencies are already attempting to purge the evidence of their unconstitutional mass surveillance. *See* Nelson, Steven, U.S. News &World Report, "NSA Phone Dragnet Will Be Emptied, Feds Say, If Foes Allow It," July 29, 2015, http://www.usnews.com/news/articles/2015/07/29/nsa-phone-dragnet-will-be-emptied-feds-say-if-foes-allow-it. Exhibit 2.

This evidence is required to show the ultimate amount of damages that is to be awarded to Appellees-Cross-Appellants, as well as members of the class.  It would only be after damages are granted and this case is at its conclusion that the requested purging of all of Appellees-Cross-Appellants' and other class members records should take place.

## CONCLUSION

For the foregoing reasons, Appellees-Cross-Appellants file this Response to Appellants-Cross-Appellees' supplemental brief. This Court must finally decide the issues before it, namely whether the mass collection of telephone metadata violated the Fourth Amendment to the U.S. Constitution.  This issue is still live before this Court as the unconstitutional conduct is continuing to this day and this Court must respectfully step in to put an end to it once and for all.  Appellees-Cross-Appellants sought a preliminary injunction nearly two years ago and still have not received the relief that they were granted by the District Court. It is the

duty of this Court to protect the rights of the American people and prevent this

government from stepping all over the U.S. Constitution, no matter what law is in

effect. A preliminary injunction would serve as a necessary and enforceable check

to further unconstitutional violations, with the District Court's contempt powers as

a legally appropriate "incentive" to obey the law.


Dated: August 4, 2015

                    Respectfully Submitted,


                     /s/ *Larry Klayman*
                    Larry Klayman, Esq.
                    D.C. Bar No. 334581
                    2020 Pennsylvania Ave. NW #345
                    Washington, DC 20006
                    Tel: (310) 595-0800
                    Email: leklayman@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2015, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the District

of Columbia Circuit by using the appellate CM/ECF system.


Respectfully Submitted,


 /s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW #345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

# Exhibit 1

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

Docket Number(s): **14-42**                                      Caption [use short title]

Motion for: **Preliminary Injunction**                           **ACLU v. Clapper**

_____

_____

Set forth below precise, complete statement of relief sought:

Preliminary injunction (i) barring the government, during the pendency of this

suit, from collecting Plaintiffs' call records under the call-records program;

(ii) requiring the government, during the pendency of this suit, to quarantine all of

Plaintiffs' call records already collected under the program; and (iii) prohibiting the

government, during the pendency of this suit, from querying metadata obtained

through the program using any phone number or other identifier associated with them.

MOVING PARTY: **ACLU et al.**                    OPPOSING PARTY: **Clapper et al.**
☑ Plaintiff          ☐ Defendant
☐ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: **Jameel Jaffer**              OPPOSING ATTORNEY: **David Jones**
                    [name of attorney, with firm, address, phone number and e-mail]

**ACLU, 125 Broad Street, 18th Floor**           **U.S. Attorney's Office for the SDNY, 86 Chambers Street, 3rd Flr.**

**New York, NY 10004**                           **New York, NY 10007**

**212-519-7814 / jjaffer@aclu.org**              **212-637-2739 / david.jones6@usdoj.gov**

Court-Judge/Agency appealed from: **S.D.N.Y - Hon. William H. Pauley III**

**Please check appropriate boxes:**              **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):     Has request for relief been made below?          ☐ Yes ☐ No
☑ Yes  ☐ No (explain): _____     Has this relief been previously sought in this Court?   ☐ Yes ☐ No
                                                    Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know              _____
Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know                          _____

                                                 _____

Is oral argument on motion requested?  ☑ Yes ☐ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☑ Yes ☐ No  If yes, enter date: **September 2, 2014 (already heard)**

**Signature of Moving Attorney:**
**/s/ Jameel Jaffer**        Date: **July 14, 2015**        Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

# 14-42

IN THE

# United States Court of Appeals

FOR THE

## Second Circuit

AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; NEW YORK CIVIL LIBERTIES UNION; and NEW YORK CIVIL LIBERTIES UNION FOUNDATION,

*Plaintiffs–Appellants,*

– v. –

JAMES R. CLAPPER, in his official capacity as Director of National Intelligence; KEITH B. ALEXANDER, in his official capacity as Director of the National Security Agency and Chief of the Central Security Service; CHARLES T. HAGEL, in his official capacity as Secretary of Defense; ERIC H. HOLDER, in his official capacity as Attorney General of the United States; and JAMES B. COMEY, in his official capacity as Director of the Federal Bureau of Investigation,

*Defendants–Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## MOTION FOR PRELIMINARY INJUNCTION

Christopher T. Dunn
Arthur N. Eisenberg
New York Civil Liberties Union
 Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

Jameel Jaffer
Alex Abdo
Patrick Toomey
American Civil Liberties Union
 Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
jjaffer@aclu.org

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ ii

Motion for Preliminary Injunction ................................................................1

    I.    Developments since this Court's May 7 ruling. ......................................2

    II.   The urgent need for injunctive relief. ..................................................6

        a.    Likelihood of success on the merits. ...............................7

        b.    Irreparable injury. .........................................................13

        c.    Public interest and the balance of equities........................14

Conclusion ....................................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ....................................... 1, 7, 11, 12

*Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013)............................................13

*Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456 (6th Cir. 1999)......................................................................................................14

*Riley v. California*, 134 S. Ct. 2473 (2014) .........................................................13

*United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012).....................................9

*United States v. Gonzales*, 520 U.S. 1 (1997)...........................................................9

**Statutes**

USA FREEDOM Act of 2015, Pub. L. 114-23, ___ Stat. ___ (2015) ............. 3, 4, 8

**Other Authorities**

161 Cong. Rec. S3331-02 (daily ed. May 31, 2015) .............................................11

H. Rep. No. 114-109 (2015) ..............................................................................9, 11

Opinion & Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 29, 2015) .... passim

Primary Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 29, 2015) .............5

## Motion for Preliminary Injunction

On May 7, this Court ruled that the National Security Agency's call-records program is unlawful, explaining that Section 215 of the Patriot Act does not authorize bulk collection, and that if Congress had intended to authorize the NSA to collect sensitive records about hundreds of millions of Americans, it would have done so explicitly. *ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015). Because Section 215 was scheduled to sunset on June 1, however, this Court declined to enjoin the surveillance, deeming it "prudent to pause to allow an opportunity for debate in Congress that may (or may not) profoundly alter the legal landscape." *Id.* at 826. The congressional debate is now over, and after exhaustive consideration of the issue, Congress has declined to expand the government's surveillance authority. Yet today the government is continuing—after a brief suspension—to collect Americans' call records in bulk on the purported authority of precisely the same statutory language this Court has already concluded does not permit it.

Accordingly, Plaintiffs respectfully ask that the Court now grant the preliminary relief it refrained from granting in its earlier decision. Specifically, Plaintiffs ask that the Court issue a preliminary injunction (i) barring the government, during the pendency of this suit, from collecting Plaintiffs' call records under the NSA's call-records program; (ii) requiring the government, during the pendency of this suit, to quarantine all of Plaintiffs' call records already

collected under the program; and (iii) prohibiting the government, during the
pendency of this suit, from querying metadata obtained through the program using
any phone number or other identifier associated with them. Plaintiffs also ask that
the Court, after the entry of preliminary relief, remand so that the district court can
expeditiously consider the appropriate scope of final relief, including but not
limited to an injunction that would require the government to end the program and
purge records collected unlawfully.[1]

## I.    Developments since this Court's May 7 ruling.

Since the Court issued its opinion, there have been several significant
developments relating to the surveillance challenged here. The upshot of those
developments, detailed below, is that: the government is collecting call records in

---

[1] On June 9, this Court directed the parties to file by July 24 "supplemental
briefs, not to exceed twenty pages in length, regarding the effect of the USA
FREEDOM Act on the above-captioned case, and in particular whether any or all
of the claims asserted by the plaintiffs–appellants have been rendered moot as a
result of that legislation." Order, *ACLU v. Clapper*, ECF No. 190 (2d Cir. June 9,
2015). The case is not moot. The government is engaged in the same surveillance it
was engaged in before the passage of the Act, and on the basis of exactly the same
statutory language. Moreover, Plaintiffs' expungement claim will survive even if
the government ceases the surveillance. *See* JA027 (Compl. at 10) (requesting that
the court "[o]rder Defendants to purge from their possession all of the call records
of Plaintiffs' communications in their possession collected pursuant to the [call-
records program]"). As discussed below, the government has suggested that it
intends to retain and use the records it has collected unlawfully.

Because this filing addresses the issue of mootness, Plaintiffs respectfully ask
that the Court treat this filing as satisfying the Court's request for supplemental
briefing.

bulk under the same statutory authority this Court previously held did not permit it; the government intends to continue this surveillance for at least 180 days; and the government apparently intends to retain and use the fruits of its unlawful surveillance indefinitely.

*First*, on June 1, the authority that had been granted by Section 215 of the Patriot Act expired after the Senate declined to pass a bill that would have temporarily extended the authority without modification. Reuters, *Senate Lets NSA Spy Program Lapse, at Least for Now*, Reuters, June 1, 2015, http://reut.rs/ 1GcLAOs.

*Second*, on June 2, President Obama signed into law the USA FREEDOM Act of 2015, Pub. L. 114-23, ___ Stat. ___ (2015) (hereinafter, "USA Freedom Act"). As relevant here, the legislation provides that, after a period of 180 days, the government will be permitted to collect call detail records under 50 U.S.C. § 1861 only if it meets certain "additional requirements." USA Freedom Act § 101; *see also id.* § 101–103 (setting out scheme under which government will be permitted to access call records, with particularized suspicion, through targeted demands). For an initial 180-day period, however, the legislation leaves in place— unaltered—the statutory provision that the government unlawfully invoked to justify the collection of call records in bulk for more than seven years. *See id*. § 109(a) (providing that "[t]he amendments made by sections 101 through 103

3

shall take effect on the date that is 180 days after the date of the enactment of this Act"); *id.* § 109(b) ("[n]othing in this Act shall be construed to alter or eliminate the authority of the Government to obtain an order under [50 U.S.C. § 1861] as in effect prior to the effective date described in subsection (a) during the period ending on such effective date").

*Third*, on the same day that President Obama signed the USA Freedom Act into law, the government asked the Foreign Intelligence Surveillance Court ("FISC") to allow it to resurrect the call-records program. *See* Mem. of Law, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 2, 2015) (hereinafter, "June 2 Application").[2] The government argued that "the version of Section 1861 in effect" was "in pertinent part, the same version in effect at the time the [FISC] approved the Government's" earlier applications for authority to collect call records in bulk. June 2 Application at 4. It argued that Congress's decision to delay by 180 days the imposition of the "additional requirements" relating to the collection of call records constituted an implicit endorsement of bulk collection during that period and reflected a legislative intent to "allow for the orderly termination" of that collection. *Id.* at 5. The government also contended that this Court's May 7 ruling as to the lawfulness

---

[2] The June 2 Application is available at https://s3.amazonaws.com/ s3.documentcloud.org/documents/2094693/misc-15-01-memorandum-of-law.pdf.

of the call-records program was incorrect, and it reminded the FISC "that Second Circuit rulings do not constitute controlling precedent for this Court." *Id*. at 7.

*Fourth*, on June 29, a judge of the FISC granted the June 2 Application. Opinion & Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 29, 2015) (hereinafter, "June 29 FISC Opinion"); *see also* Primary Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 29, 2015).[3] The court reasoned that the USA Freedom Act had effectively restored, for 180 days, the version of section 1861 that had been in effect immediately before the June 1 sunset. June 29 FISC Opinion at 9. It also reasoned that, by delaying for 180 days the implementation of the "additional requirements" for collection of call records, Congress had implicitly "authorized bulk acquisition of call detail records during the interim 180-day period," *id*. at 10, and ratified earlier decisions of the FISC authorizing bulk collection, *id*. at 11, 18. The FISC specifically rejected the reasoning of this Court's May 7 ruling, writing that it rested "[t]o a considerable extent . . . on mischaracterizations of how [the call-records program] works and on understandings that, if they had once been

---

[3] The June 29 FISC Opinion is available at http://www.fisc.uscourts.gov/sites/default/files/BR%2015-75%20Misc%2015-01%20Opinion%20and%20Order_0.pdf.

The June 29 Primary Order is available at http://www.fisc.uscourts.gov/sites/default/files/BR%2015-75%20Primary%20Order%20%28redacted%29%20.pdf.

correct, have been superseded" by the USA Freedom Act. *Id*. at 16. On the issue of the constitutionality of the call-records program, the FISC judge reaffirmed earlier FISC opinions holding that the issue was controlled by *Smith v. Maryland*, 442 U.S. 735 (1979), and that the call-records program was, therefore, consistent with the Fourth Amendment. *Id*. at 19–25.[4]

*Fifth*, on June 19, the government filed a supplemental brief in *Smith v. Obama*, No. 14-35555 (9th Cir., oral argument held Dec. 8, 2014), another challenge to the call-records program, arguing that expungement would not be available as a matter of law even to a plaintiff who established that the call-records program was unconstitutional, Suppl. Br. for Appellees at 6, *Smith v. Obama*, No. 14-35555 (9th Cir. June 19, 2015); that even if courts possessed equitable power to require expungement, they should not exercise it with respect to records collected under the call-records program, *id*. at 8; and that there is no legal bar to the government's retention and use of the fruits of unlawful searches and seizures, *id*. at 7.

## II.    The urgent need for injunctive relief.

In its May 7 ruling, this Court held that Plaintiffs had "shown a likelihood—indeed, a certainty—of success on the merits of at least their statutory claims," but it declined to issue preliminary injunctive relief at that time, noting that Section

---

[4] The FISC did not address the constitutionality of the program under the First Amendment. To Plaintiffs' knowledge, it has never done so.

215 was "scheduled to expire in just several weeks" and that congressional action

(or inaction) could alter the legal landscape. *Clapper*, 785 F.3d at 826. The Court

contemplated, in particular, the possibility that Congress would expressly

"expand[]" Section 215 "to authorize the telephone metadata program," an

eventuality that would require the Court to adjudicate constitutional questions it

had not yet had to decide. *Id*.

The legislative debate to which this Court deferred has now come and gone.

Although it considered doing so, Congress did not expand the government's

statutory authority to permit bulk collection of call records. The government

continues to collect call records in bulk, however, based on the same statutory

language this Court has already held does not permit it. The government apparently

intends to continue this surveillance for at least 180 days, and it apparently intends

to retain and use the fruits of its unlawful surveillance indefinitely. Against this

background, Plaintiffs respectfully urge the Court to issue the preliminary

injunctive relief it refrained from issuing earlier.

### a.  Likelihood of success on the merits.

This Court has already concluded that Plaintiffs have shown "a certainty" of

success on the merits of their statutory claim. *Clapper*, 785 F.3d at 825. The

Court's earlier analysis still holds because Congress, after exhaustive debate,

declined to "expand" section 1861 to authorize the bulk collection of call records.

7

Quite the opposite, Congress expressly provided in the USA Freedom Act that,

during the initial 180-day period following passage of the Act, both the language

of section 1861 *and the government's surveillance authority* remain exactly as they

were before. *See* USA Freedom Act § 109(a) (providing that "[t]he amendments

made by sections 101 through 103 shall take effect on the date that is 180 days

after the date of the enactment of this Act"); *id.* § 109(b) ("[n]othing in this Act

shall be construed to alter or eliminate the authority of the Government to obtain

an order under [50 U.S.C. § 1861] as in effect prior to the effective date described

in subsection (a) during the period ending on such effective date"); *see also* Suppl.

Br. for Appellees at 4, *Smith v. Obama*, No. 14-35555 (9th Cir. June 19, 2015)

("the former version of Section 215 remains fully in effect"); June 2 Application at

4 (same).

   Notwithstanding the Act's plain language—which, again, expressly states

that the government's authority to collect call-detail records has not been

"alter[ed]" during the 180-day transition period—the FISC concluded that the USA

Freedom Act constituted a legislative ratification of bulk collection and of the

FISC's capacious construction of section 1861. June 29 FISC Opinion at 10–11.

This reasoning does not withstand scrutiny. Even if legislative history indicated

clearly that Congress intended to endorse the FISC's interpretation of section 1861,

legislative history could not prevail over the statute's language, which is

8

unambiguous. *See, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given [a] straightforward statutory command, there is no reason to resort to legislative history."); *United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012) ("Only if we discern ambiguity do we resort first to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history." (quotation marks omitted)).

And the legislative history here does *not* clearly evince an intent to authorize bulk collection—as even the FISC acknowledged. *See* June 29 FISC Opinion at 11 ("To be sure, there were statements [in the legislative history] that criticized the FISC's interpretation of 'relevance' that underlay previous orders for the bulk production of call detail records and expressions of approval of the contrary decision of the United States Court of Appeals for the Second Circuit."). The committee report on the bill, for example, declared that "Congress' decision to leave in place the 'relevance' standard for Section 501 orders should *not* be construed as Congress' intent to ratify the FISA Court's interpretation of that term." H. Rep. No. 114-109, at 18–19 (2015) (emphasis added).

The FISC cited two instances in which sponsors of the USA Freedom Act indicated that they expected bulk collection to continue during the 180-day period, but even if these isolated statements were sufficient to establish the views of the Act's sponsors, the appropriate question—if legislative history were relevant at

9

all—is not what individual sponsors of the bill thought, but what *Congress* thought. And on *this* question, the legislative history provides no single answer. *See* June 29 FISC Opinion at 12 ("[F]inding supportive legislative history for a proposition is a little like stumbling upon a multi-family garage sale: if you rummage around long enough, you will find something for everybody, and none of it is worth much.").

In the present context, as in most others, the most reliable indicator of congressional intent is the text of the law. Here, that text admits no ambiguity. It makes clear that Congress intended to leave the government's surveillance authority with respect to call records unaltered for the 180 days after the passage of the Act.

The FISC seems to have reasoned that Congress must have intended to authorize bulk collection during the transitional period because it did not expressly prohibit it. *See id*. at 10–11 ("Congress could have prohibited bulk data collection . . . ."). But the FISC has it backwards. In our democracy, the government has only the powers the people have granted it; the question is not what surveillance Congress has *proscribed*, but what surveillance it has *permitted*. Moreover, here Congress was legislating in the shadow of this Court's May 7 opinion, which indicated that this Court—the *only* appellate court to have construed the statute—would continue to construe the statute to disallow bulk

10

collection unless Congress amended it to expressly authorize such collection. *See, e.g.*, *Clapper*, 785 F.3d at 818 (stating that the Court would read the statute to authorize bulk collection only if Congress authorized it in "unmistakable language"); *id*. at 819 (stating that the government's proposed construction of the statute would require "a clearer signal" from Congress); *id*. at 821 (indicating that, if Congress wanted to authorize bulk collection under the statute, it would have to do so "unambiguously"); *see also id*. at 826–27 (Sack, J., concurring).

This Court's May 7 opinion was cited hundreds of times in the legislative debate that preceded the passage of the Act; it was summarized at length in the committee report; and one senator even read large parts of the opinion into the legislative record. *See* 161 Cong. Rec. S3331-02 (daily ed. May 31, 2015) (statement of Sen. Rand Paul); H. Rep. No. 114-109, at 8–10 (2015); June 2 Application at 9 n.2 ("Congress was aware of the Second Circuit's opinion . . . ."). Against this background, it would be bizarre to understand Congress's "failure" to expressly prohibit bulk collection as an implicit endorsement of it. Indeed, if it has any bearing at all, the doctrine of legislative ratification favors Plaintiffs. *See, e.g.*, H. Rep. No. 114-109, at 19 (2015) ("These changes restore meaningful limits to

the 'relevance' requirement of Section 501, consistent with the opinion of the U.S.

Court of Appeals for the Second Circuit in *ACLU v. Clapper*.").[5]

The crucial fact, however, is that the language the government is relying on

to collect call records now is precisely the same language this Court has already

concluded does not permit that surveillance. There is no sound reason to accord

this language a different meaning now than the Court accorded it in May. Section

1861 did not authorize bulk collection in May, and it does not authorize it now.

If this Court now reads the statute as the FISC has read it, then the Court

must reach the "vexing" constitutional questions it earlier avoided. *Clapper*, 785

F.3d at 821–25. As Plaintiffs have argued, the dragnet surveillance at issue here is

---

[5] The FISC suggested that Congress would not have provided for a transitional period if it had not contemplated that bulk collection would continue during that period. This does not follow. Congress plainly wanted the government and the FISC to have time to transition to the new system described in Sections 101–103 of the Act. But to say that Congress wanted to provide time for a transition to a *new* system is not to say that Congress endorsed any particular view of the *existing* system. Moreover, the existing system had many uses aside from bulk collection, and the government had forcefully cited those uses as a reason to reauthorize Section 215. James Comey, Dir., Fed. Bureau of Investigation, Remarks at the Georgetown University Law Center's Third Annual Cybersecurity Law Institute (May 20, 2015), http://www.fednews.com/transcript.php?item=560656 ("[W]e use section 215 in individual cases in very important circumstances. Fewer than 200 times a year we go to the FISA court in a particular case and get particular records that are important to an intelligence investigation or a counterterrorism investigation. If we lose that authority, which I don't think is controversial with folks, that is a big problem because we will find ourselves in circumstances where we can't use a grand jury subpoena or we can't use a national security letter, unable to obtain information with a court's approval that I think everybody wants us to be able to obtain in individual cases. So that's a problem.").

antithetical to the rights that the Fourth and First Amendments were intended to safeguard. Pl. Br. 38–52 (Fourth Amendment); *id.* at 53–59 (First Amendment); Pl. Reply 17–24 (Fourth Amendment); *id.* at 24–26 (First Amendment). The government's principal argument—that the Supreme Court implicitly authorized the government to place the entire nation under intrusive, indefinite surveillance when it decided in 1979 that the police in Baltimore could install a pen register for several days on one criminal suspect's phone line—is both deeply unpersuasive on its own terms and impossible to reconcile with the Supreme Court's more recent decisions in *United States v. Jones*, 132 S. Ct. 945 (2012), and *Riley v. California*, 134 S. Ct. 2473 (2014). Plaintiffs have briefed these issues at length already and do not believe a reprise of those arguments is necessary here.[6]

### b. Irreparable injury.

In the absence of preliminary relief, Plaintiffs will suffer irreparable injury. As Plaintiffs have noted, Pl. Br. 60, this Court has generally *presumed* irreparable harm where there is an alleged deprivation of constitutional rights, but Plaintiffs

---

[6] *Riley* was decided after Plaintiffs' appeal was fully briefed, but Chief Justice Roberts's opinion for the Court in that case—which held that police may not generally search cell phones under the "search incident to arrest" exception to the warrant requirement—serves as a further caution against the heedless extension of analog-era precedents to circumstances far removed from the ones that gave rise to them. *See, e.g.*, 134 S. Ct. at 2488 (2014) ("That is like saying a ride on horseback is materially indistinguishable from a flight to the moon."); *see also Klayman v. Obama*, 957 F. Supp. 2d 1, 37 (D.D.C. 2013) ("I cannot possibly navigate these uncharted Fourth Amendment waters using as my North Star a case that predates the rise of cell phones.").

would satisfy the irreparable harm standard here even if this presumption did not
apply. The continuation of the challenged surveillance means the continuation of
the government's intrusion into Plaintiffs' sensitive associations and
communications. The chill on whistleblowers and others who would otherwise
contact Plaintiffs, Pl. Br. 53–54 (citing record evidence), is also immediate and
irremediable. The government's queries of its call-records database compound
Plaintiffs' injury because each of those queries involves an analysis of Plaintiffs'
records to determine whether Plaintiffs have been in contact with the government's
surveillance targets. Pl. Br. 44 n.11, 61. And the government's apparent intent to
retain the fruits of its unlawful surveillance even after the 180-day period indicates
that, in the absence of injunctive relief, the injury to Plaintiffs will continue
indefinitely.

### c.  Public interest and the balance of equities.

The public interest and the balance of equities also favor the entry of
preliminary relief. As Plaintiffs have explained, Pl. Br. 61, the government has no
legitimate interest in conducting surveillance that is unlawful. *Memphis Planned
Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 495 (6th Cir. 1999) ("[T]he public is
certainly interested in preventing the enforcement of unconstitutional statutes and
rules; therefore, no harm to the public will result from the issuance of the
injunction here."). Moreover, the preliminary relief sought by Plaintiffs would not

14

prejudice the government even if it is assumed, against the evidence, Pl. Br. 61–62 (citing official government reports), that the bulk collection of call records is effective and necessary. The record is clear that the government need not collect Plaintiffs' call records in order to obtain the call records of suspected terrorists and their contacts. Pl. Reply 27. If the government believes that Plaintiffs themselves are legitimate investigative targets, it can collect their records with targeted demands under section 1861 or other authorities. Pl. Reply 27. Finally, the preliminary relief that Plaintiffs have sought would not be unduly burdensome for the government to implement. Pl. Reply 27–28 (citing record evidence). In sum, the entry of preliminary relief would mitigate Plaintiffs' injuries without compromising any legitimate government interest.

## Conclusion

Plaintiffs respectfully request that the Court enter the preliminary relief described above and remand to the district court for expeditious consideration of the proper scope of final relief.

Dated: July 14, 2015                                   Respectfully submitted,

                                                         /s/ Jameel Jaffer
Christopher T. Dunn                                    Jameel Jaffer
Arthur N. Eisenberg                                    Alex Abdo
New York Civil Liberties Union                         Patrick Toomey
    Foundation                                         American Civil Liberties Union
125 Broad Street, 19th Floor                               Foundation
New York, NY 10004                                     125 Broad Street, 18th Floor
Phone: (212) 607-3300                                  New York, NY 10004

15

Fax: (212) 607-3318
aeisenberg@nyclu.org

Phone: (212) 549-2500
Fax: (212) 549-2654
jjaffer@aclu.org

16

# Exhibit 2



# NSA Phone Dragnet Will Be Emptied, Feds Say, If Foes Allow It

Eye rolls greet the professed desire to purge databases.



Cars drive down a road near the National Security Agency's large data farm in Bluffdale, Utah.

By Steven Nelson   |   July 29, 2015 | 3:03 p.m. EDT      + More

The U.S. government says it wants to empty the National Security Agency's databases of domestic call records that were collected in bulk, but that it can't because surveillance foes seeking a courtroom win for privacy rights have forced their retention.

The Office of the Director of National Intelligence said Monday stored records will be accessible only to technical personnel for three months after the phone call dragnet ends in November pursuant to reforms in the USA Freedom Act, which became law last month.

Then, "as soon as possible [after Feb. 29, 2016]," the government will "destroy the Section 215 bulk telephony metadata upon expiration of its litigation preservation obligations," the statement says.

A spokeswoman for the ODNI, Kathleen Butler, tells U.S. News that authorities would delete all records collected in bulk under a contested reading of Section 215 of the Patriot Act, not just those now held longer than the standard five years in response to court-issued preservation orders.

[**READ:** Pardon Snowden? Nah, White House Says in Petition Response]

Several individuals and organizations are challenging the call record dragnet, the first and best-known program exposed by whistleblower Edward Snowden in 2013. But only the Electronic Frontier Foundation appears to have specific preservation of evidence orders.

8/4/2015 NSA Phone Dragnet Will Be Emptied, Feds Say if Foes Allow - US News

Case 1:13-cv-00851-RJL Document 140-5 Filed 08/10/15 Page 42 of 43
USCA Case #14-5004 Document #1565200 Filed: 08/04/2015 Page 48 of 49

Cindy Cohn of the EFF has said she's willing to support dropping the preservation
orders – thus allowing the records' destruction – if government attorneys admit their clients' records
were taken.

But that seemingly reasonable offer, previously made in court filings, is unlikely to be accepted.
Government attorneys generally refuse to concede the point so they can argue groups and individuals
can't prove their records were taken and, therefore, lack standing to sue.

"What they want is for folks like you to paint us privacy advocates as the reason that records aren't
being destroyed," Cohn says. "But if they would just own what they did to millions of Americans, instead
of still hiding behind game-playing like their standing arguments, we could move forward with a
reasonable destruction plan."

[**FBI DIRECTOR:** Authorities Will 'Go to Jail' If They Browse U.S. Snapchats Without Warrant]

Though authorities have conceded bulk collection happened and will continue through November,
attorneys defending the NSA say the government has not confirmed that any provider other than
Verizon Business Network Services is affected. That Verizon subdivision was named in a document
leaked by Snowden that authorities acknowledge is authentic.

Cohn suspects there's logic behind the Department of Justice's dogged refusal to concede such basic
and commonly known facts about mass phone-record collection.

"I think their strategy in the cases has always been to throw as many roadblocks up as possible to
prevent the courts from ruling on whether these programs are legal or constitutional," she says.
"Because if the courts rule, especially on the constitutionality of mass surveillance, it could have longer
lasting impact than even a statute does. Congress can change its mind easier than the Supreme Court
does in interpreting the Constitution."

Other attorneys leading lawsuits against the program – none of which yet have been found moot after
passage for the Freedom Act – say they don't currently have preservation of evidence orders.

[**POLL:** Edward Snowden Unpopular at Home, A Hero Abroad]

"We are certainly not asking for preservation," says Alex Abdo, an attorney at the American Civil
Liberties Union, which in May won a ruling finding the program unlawful and not authorized by Section
215 of the Patriot Act from a panel of the U.S. Court of Appeals for the 2nd Circuit.

Legal activist Larry Klayman, who in 2013 won the first and thus far only District Court ruling against
the program – with Judge Richard Leon finding it likely violates the Fourth Amendment – says his
cases (one is a yet-to-be-considered class-action, the other was heard in November by an appeals
court) don't have preservation orders.

A third case is on appeal against the program, brought on behalf of Idaho nurse Anna Smith with
support from EFF and the ACLU. It does not have preservation orders. Nor does a long-stalled lawsuit
brought by Sen. Rand Paul, R-Ky., and the libertarian group FreedomWorks.

Luke Malek, an attorney working on Smith's case, and Ken Cuccinelli, who is representing Paul and
FreedomWorks, say they agree with Cohn. "The data should be destroyed, but it is imperative that the
standing of the citizens whose records were collected is preserved," Malek says.

[**ALSO:** House Votes -- Again -- to Stop Backdoor NSA Searches]

"At this point, we would have the same condition as EFF," says Cuccinelli. He adds he also wants an
accounting of call-record collection from before 2006, when the program came under supervision by
the Foreign Intelligence Surveillance Court.

Cohn's offer to allow the government to purge records, however, likely is for naught. Klayman says
even if authorities satisfy EFF's condition, he'll step in to block record deletion.

"You need a few court orders in a good few days. ... The government would have to behave like Hillary Clinton purging her email server. That's destroying evidence of their wrongdoing."



SEE PHOTOS
**Editorial Cartoons on the NSA**

The enterprising attorney is asking a king's ransom (in the 10-figure range) as punishment for the government allegedly violating constitutional rights and feels the evidence will help the effort. He doubts intelligence officials are being honest about their willingness to part with the records anyhow.

Klayman wants the dragnet databases in the meantime put under the supervision of ordinary courts rather than the Foreign Intelligence Surveillance Court, the shadowy institution that secretly approved the NSA program for years before Snowden's disclosures.

TAGS: NSA, FISA

+ More



Steven Nelson is a reporter at U.S. News & World Report. You can follow him on Twitter or reach him at snelson@usnews.com.

**You Might Also Like**



Obama Behind the Scenes


Gun Control Cartoons


Obama Cartoons

## News

News Home
Opinion
National Issues
Cartoons
Photos
Videos
Special Reports
The Report

## Rankings & Consumer Advice

### Education
Colleges
Graduate Schools
High Schools
Online Programs
Community Colleges
Global Universities
Arab Universities

### Health
Hospitals
Doctor Finder
Diets
Nursing Homes
Health Products
Health Insurance
Medicare

### Money
Jobs
Financial Advisors
ETFs
Mutual Funds
Retirement

### Travel
Vacations
Cruises
Hotels
Hotel Rewards
Airline Rewards

### Cars
New Cars
Used Cars

### Law
Law Firms



About U.S. News
Contact Us
Site Map

Press Room
Advertising Info
Store

Connect with us:

Copyright 2015 © U.S. News & World Report LP.
Terms and Conditions / Privacy Policy.